2043912

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**DIVISION**

**Case No:  2:20-CV-0631-FTM-29MRM**

C.S.,

       Plaintiff,

v.

NAPLES HOTEL COMPANY and THE
GULFCOAST INN OF NAPLES OWNERS
ASSOCIATION, INC.,

       Defendants

_____/

**DEFENDANTS', NAPLES HOTEL COMPANY D/B/A GULFCOAST INN NAPLES,**
**THE GULFCOAST INN OF NAPLES OWNERS ASSOCIATION, INC., MOTION**
**TO DISMISS PLAINTIFFS' COMPLAINT**
**AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

Defendants, NAPLES HOTEL COMPANY d/b/a GULFCOAST INN NAPLES, THE

GULFCOAST INN OF NAPLES OWNERS ASSOCIATION, INC., (hereinafter referred to

collectively as "Gulfcoast Inn Naples Defendants"), pursuant to Federal Rule of Civil

Procedure 12(b)(6), file this Motion to Dismiss the Plaintiffs' Complaint and Memorandum of

Law in Support and as grounds in support state the following:

## I.      <u>INTRODUCTION</u>

Plaintiffs' Complaint is an indecipherable pleading that still does not contain <u>any</u>

specific allegations but only general allegations of sex trafficking activities pertinent to

Plaintiffs' claims against the Gulfcoast Inn Naples Defendants and generally alleges that both

Plaintiffs "were trafficked" over a two-year period "from approximately 2015 to 2016."

Plaintiff's claims are fundamentally flawed and the Complaint continues to be a prohibited shotgun pleading, despite the courts prior order instructing the plaintiff to amend to remedy this issue.

Furthermore, the Complaint fails to plausibly allege any facts against Gulfcoast Inn Naples Defendants which could render it liable under 18 U.S.C. § 1595, the Trafficking Victims Protection Reauthorization Act ("TVPRA") or any of the alleged state law claims. Plaintiff's own allegations demonstrate the nonsensical nature of their strict liability interpretation of the TVPRA. The Complaint makes conclusory allegations claiming that these identical facts are generically taking place at "each and every" one of Gulfcoast Inn Naples Defendants' properties, even though there is only one property. Complaint ¶ 54. Further, they admit that while Gulfcoast Inn Naples Defendants may not have been able to prevent the alleged trafficking of Plaintiff, stating that Gulfcoast Inn Naples Defendants were obligated to encourage employees to be "more willing to report it when it happened." *Id*. ¶ 56. Plaintiff's own allegations set forth facts which when accepted as true render their claims implausible, if not impossible. The TVPRA was not established to create a strict liability standard by which one who earns legitimate business revenue can later be held civilly liable for sex trafficking based simply on the fact that they should have known those engaged in commercial sex may try to avail themselves of a legitimate business service offered to the public. To do so would expand the scope of liability to an infinite number of businesses (airlines, ride share services, taxis, nail and hair salons, gas stations, restaurants, food delivery services, etc.).  Properly alleging a "knowing benefit" from "participation in a venture" under § 1595 must be more than merely alleging that one has earned business revenue through a legal, contractual relationship. Similarly, properly alleging that one "knew or should

have known" a venture in which they were participating was engaged in a violation of § 1591 must be more than alleging one had general knowledge that commercial sex or other crimes occur across the country. Such allegations, like the ones alleged in the Complaint, do not plausibly establish a cause of action against Gulfcoast Inn Naples Defendants, and if they did, the statute itself would render hotels obsolete. Furthermore, neither the legislative history nor the plain language of the statute itself support a strict liability interpretation like the one Plaintiff attempts to impose.

## II.  LEGAL STANDARD

### A.  <u>Motion to Dismiss</u>

In deciding a Rule 12(b)(6) motion to dismiss, "[l]egal conclusions without adequate factual support are entitled to no assumption of truth." *Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. lqbal*, 556 U.S. 662, 678 (2009). Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible. *Chaparro v. Carnival Corp*., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted). Thus, the court engages in a two-step approach: the court first "identifies pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *lqbal*, 556 U.S. at 679. The court must then assume the veracity only of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." Id.; see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Jacob V. Mentor Worldwide, LLC*, 389 F.Supp.3d 1024, 1027 (M.D. Fla. 2019) (quoting *Iqbal*, 556 U.S. at 678). The plausibility standard is only met when "the plaintiff pleads enough factual content to allow the court to 'draw

the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. at 1027-28. Accordingly, a well-pleaded complaint "demands more than unadorned, the-defendant-unlawfully-harmed-me accusation." *Arthur v. JP Morgan Chase Bank, NA*, 569 F. App'x 669, 681 (11th Cir. 2014).

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555; see also *Edwards V. Prime Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citation omitted).

### III. ARGUMENT

**A.     Plaintiff's Third Amended Complaint is a shotgun pleading.**

Plaintiff's Complaint, a separate new action against Gulfcoast Inn Naples Defendants, is filed along with no less than sixteen other new actions against various hospitality entities asserting nearly identical claims.[1]  The factual allegations are substantially identical in each complaint. This Court has already held that Plaintiff's Second Amended Complaint (which was previously filed against this defendant along with numerous other hotels in Naples Florida)

---

[1]  Plaintiff's Second Amended Complaint (before the matters were severed) was dismissed by this Court on "shotgun pleading" grounds. See S.Y. V. Naples Hotel Co., et al., No. 220-cv-118, 2020 WL 4504976, at *6 (M.D. Fla. Aug. 5, 2020). Plaintiff then filed other separate actions in this District against Gulf Coast Inn Naples Defendants as well as Inn of Naples . See C.S. v. Inn Of Naples, et al., No. 2:20-cv-00629 (M.D. Fla. Aug. 19, 2020) as well as other cases by, S.Y., ECF No. 1. The allegations involving each hotel are nearly identical.

was an improper "shotgun pleading" because it was "a complaint containing multiple counts where each count adopts the allegations of all preceding counts." *S.Y. v. Naples Hotel Company, et al.*, No. 2:20-cv-118-FtM, 2020 WL 4504976, at *6 (M.D. Fla. Aug. 6, 2020). The Complaint has not been amended to comply with the Court's Order, and the deficiencies noted by the Court remain. *See* Complaint ¶¶ 155-156, 163-164, 178-179, 197-198, 214, 231. The Complaint is also impermissibly "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019) (citing *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1322-23 (11th Cir. 2015)); Complaint ¶¶ 30-33, 41-69, 75, 83, 109-116. Plaintiff's allegations are also directly contradictory-Plaintiff simultaneously alleges that Gulfcoast Inn Naples Defendants retains "significant control" of the hotel while also alleging that Gulfcoast Inn Naples Defendants failed to adopt more controlling policies and procedures to prevent Plaintiff's trafficking. *Id*. In 46, 106.

In addition, the Complaint continues to violate the portion of the shotgun pleading rule which prohibits "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions[.]" *Weiland*, 792 F.3d at 1323. The Complaint pervasively lumps separate defendants together, in conclusory fashion, treats separate defendants as a single entity without sufficient allegations to support that treatment, and fails to make differentiated allegations against each defendant so that each may be clear on what it is being sued for. Complaint¶¶ 98-108, 138-191.

This method of pleading is plainly insufficient. *See Joseph v. Bernstein*, 612 F. App'x 551, 555 (11th Cir. 2015) (holding that indiscriminately lumping all defendants together violates Rule

8); *see also George & Co., LLC v. Alibaba.com, Inc.*, No. 2:10-cv-719, 2011 WL 6181940, at *2 (M.D. Fla. Dec. 13, 2011) (holding similarly). Failure to allege facts as to each separate but related defendant violates Rule 8 and *Twombly/Iqbal*. *See City of Miami v. JPMorgan Chase & Co.*, 171 F. Supp. 3d 1309, 1313-14 (S.D. Fla. 2016). However, that is exactly what Plaintiff has done here. Plaintiff's pervasive mix-and-match approach leaves each Defendant at a loss to know whether it is being charged with specific conduct or whether it is simply being held responsible for the acts of another (named or unnamed) as part of the same vaguely pled "venture." The Complaint thus fails to "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.

A complaint fails to satisfy the notice standard when it groups numerous defendants together and fails to plausibly distinguish each defendant's conduct from the alleged conduct of the other defendants. *See, e.g., Altimas v. Whitney*, No. 2:09-cv-682, 2020 WL 11507244, at *1 (M.D. Fla. Dec. 9, 2010); *see also Pierson v. Orlando Regional Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1271 (M.D. Fla. 2009) (dismissing a complaint where the allegations were made against a group of defendants collectively labeled as the "Peer Review Defendants" without explaining each defendant's role in the claim). The Eleventh Circuit, in affirming dismissal of a similar shotgun pleading, described the complaint as:

> replete with allegations that "the defendants" engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of. Each count incorporates by reference the allegations made in a section entitled "General Factual Allegations"-which comprises 146 numbered paragraphs-while also incorporating the allegations of any count or counts that precede it. The result is that each count is replete with factual allegations that could not possibly be material to that specific count, and that any allegations that are material are buried beneath innumerable

> pages of rambling irrelevancies. This type of pleading completely disregards Rule 10(b)'s requirement that discrete claims should be plead in separate counts ... and is the type of complaint that we have criticized time and again....

*Magluta v. Samples*, 256 F.3d 1282, 1284 (11th. Cir. 2001) (internal citations omitted).

Instead of adequately pleading plausible allegations based in fact, Plaintiff now incorporates "upon information and belief" into several new allegations as a way to circumvent pleading with any specificity. *See* Complaint ¶¶ 28, 67, 74, 78, 82, 83(n), 86, This type of pleading fails to satisfy the pleading requirements of *Ashcroft/Twombly*. *See Phoenix Entm't. Partners, LLC v. Orlando Beer Garden, Inc*., No. 6:16-cv-80, 2016 WL 1567590, at *5 (M.D. Fla. Mar. 30, 2016) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard." (internal quotation omitted)).

Once legal conclusions, conclusory allegations, and contradictory allegations have been omitted from consideration in Plaintiff's Complaint, there is simply no plausible claim that has been alleged against the Gulf Coast Inn Naples Defendants.

**B.   Plaintiff's Third Amended Complaint fails to state a claim under the TVPRA.[2]**

---

[2] TVPRA claims very similar to these have been dismissed by courts across the country as to Hotels like these defendants and their related entities. *See, e.g., H.G. v. Intercontinental Hotels, Inc., et al.*, No. 4:19-cv-13622, 2020 WL 5653304 (E.D. Mich. Sept. 23, 2020); *A.B. v. Hilton Worldwide Holdings, Inc., et al.*, No. 3:19-cv-01992-IM, 2020 WL 5371459 (D. Ore. Sept. 9, 2020); *J.B. v. G6 Hospitality, et al.*, No. 19-cv-07848-HSG, 2020 WL 4901196, at **10-11 (N.D. Cal. Aug. 20, 2020); *B.M. v. Wyndham Hotels & Resorts, Inc.*, No. 20-cv-00656-BLF, 2020 WL 4368214, at **5-6 (N.D. Cal. July 30, 2020); *S.J. v. Choice Hotels Intl., Inc., et al.*, 19-cv-6071 (BMC), 2020 WL 4059569, at **4-6 (E.D.N.Y. July 20, 2020); *J.C. v. Choice Int'l, et al.*, 20-cv-00155-WHO, 2020 WL 3035794, at *1 (N.D. Cal. June 5, 2020); *Jane Doe 1 v. Red Roof Inns, Inc. et al.*, 1:19-cv-03840-WMR, 2020 WL 1872335, at *3 (N.D. Ga. Apr. 13, 2020); *Jane Doe 2 v. Red Roof Inns, Inc. et al.*, No. 1:19-cv-03841, 2020 WL 1872337, at *3 (N.D. Ga. Apr. 13, 2020); *Jane Doe 3. v. Red Roof Inns, Inc. et al*., No. 1:19-cv-03843, at *3 (N.D. Ga. Apr. 13, 2020); *Jane Doe 4. v. Red Roof Inns, Inc. et al*., No. 1:19-cv-03845, at *3 (N.D. Ga. Apr. 13, 2020). A similar complaint was dismissed where plaintiff conceded that the complaint did not state a direct TVPRA claim against the franchisors or a claim based on apparent agency. *C.K. v. Wyndham Hotels & Resorts, Inc., et al.*, Case No: 3:19-cv-1412-J-34MCR, ECF No. 125 (M.D. Fla. July 7, 2020) (direct claim and vicarious liability apparent agency claim dismissed with prejudice and vicarious liability actual agency claim dismissed without prejudice).

As to adults like Plaintiff, the TVPRA"[3] confers criminal and civil liability upon "whoever knowingly ... entices, harbors, transports, provides, obtains, or maintains by any means a person" with the knowledge that "means of force, threats of force, fraud, [or] coercion described in (e)(2)" would be employed to "cause the person to engage in a commercial sex act." 18 U.S.C. §§ 1591(a), 1595. It also establishes civil "venture liability" for a "victim" as to anyone who "**knowingly benefits**, financially or by receiving anything of value **from participation in a venture** which that person knew or should have known has engaged in an act in violation of this chapter...." *Id.* § 1595(a) (emphasis added). In order to qualify as a "victim" entitled to bring a § 1595 claim, a plaintiff must be "the *individual harmed as a result of a crime under this chapter* [Chapter 77]...." 18 U.S.C. § 1583(c) (emphasis added).

Therefore, in order to state a claim against Gulfcoast Inn Naples Defendants based on "venture liability" in § 1595, Plaintiff must first allege that at least one member of an alleged venture violated § 1591 of the TVPRA as to Plaintiff. Only if there is, indeed, a substantive violation of § 1591, should a court consider if the Complaint has plausibly alleged that Gulfcoast Inn Naples Defendants *both* (1) knowingly benefitted from participation in this venture and (2) knew or should have known of this venture's violation of § 1591. *See Bridges v. Poe*, No. 6:19-CV-01399-LSC, 2020 WL 5408915, at *6 (N.D. Ala. Sept. 9, 2020).

1.    Plaintiff fails to plausibly allege an underlying § 1591 violation.

---

[3] To interpret a statute's meaning, a court must "look first to its language, giving the words used their ordinary meaning." *Moskal v. United States*, 498 U.S. 103, 108 (1990). To determine this ordinary meaning, courts generally look to dictionary definitions for guidance. *In re Walter Energy, Inc.*, 911 F.3d 1121, 1143 (11th Cir. 2018). However, when a term is defined within the statute, that definition "declares what the term means ... [and] ... excludes any meaning that is not stated." *Burgess v. United States*, 553 U.S. 124, 130 (2008) (quoting *Colautti v. Franklin*, 439 U.S. 379,392-393, n.10 (1979)). If the statutory language is unambiguous, a court's analysis must end there. Dixon v. United States, 900 F.3d 1257,1263-64 (11th Cir. 2018).

Plaintiff alleges that she is a "victim" of trafficking under § 1591. *See e.g.,* Complaint ¶ 1. Plaintiff names certain alleged criminal actors in her Complaint but she fails to set out any facts describing any criminal investigation, indictment, prosecution, or conviction related to their alleged involvement with Plaintiff. *Id*. ¶ 70. This is in contrast to other cases in which Plaintiff s alleged traffickers have already been convicted for the crimes related to Plaintiff. *M.A. v. Wyndham Hotels & Resorts, Inc., et al.*, 425 F.Supp.3d 959, 964 (S.D. Ohio 2019) ("Plaintiff represents that her trafficker has been indicted and sentenced through the criminal process").

A venture violates § 1591 as to an adult *only* when it "knowingly ... entices ... a person" with knowledge that "coercion" would be employed to cause the person to engage in a commercial sex act. 18 U.S.C. § 1591. Black's Law Dictionary defines "entice" as "to lure or induce." *See* Entice, BLACK'S LAW DICTIONARY (11th ed. 2019). The statute defines "commercial sex act" as any sex act, on account of which anything of value is given to or received by any person. 18 U.S.C. § 1591(e)(3).

The Complaint does not allege any facts to support any coercion of Plaintiff. The TVPRA defines "coercion," in part, as "threats of serious harm to or physical restraint against any person." 18 U.S.C. § 1591(e)(2). Restraint is commonly understood as "something that limits the freedom of someone or something." *See* Restraint, BLACK'S LAW DICTIONARY (11th ed. 2019). Other dictionaries explicitly define it as "confinement." [4] Plaintiff's allegations as to this element are nothing more than a conclusory recitation of various § 1591 elements and do

---

[4]   *See* Restraint, CAMBRIDGE DICTIONARY, available at https://www.dictionary.cambridge.org /us/dictionary/english/restraint (last visited Oct. 8, 2020).

not set forth any facts in support. *See* Complaint ¶ 70 ("C.S. was recruited to, enticed to, solicited to, held at, harbored as captive at **and/or** transported" (emphasis added)); ¶ 73 ("C.S. was forced to engage in sexual activities"); ¶ 86 ("C.S. was being sex trafficked"). As such, these allegations are not entitled to an assumption of truth under *Twombly*/*Iqbal*.

Plaintiff alleges no facts to describe when she felt fearful of physical harm, and she describes no threats made by anyone. To the contrary, Plaintiff alleges that she was free to "meet the 'John' in the lobby to escort the 'John' to the hotel room" (Complaint ¶ 75(b)), was forced to meet men by pool (Complaint ¶ 74).    The Complaint does say that Plaintiff was "confined" in her room for "long periods of time" (Complaint ¶ 83(e)) but also alleges that Plaintiff freely "walked the hallways" (Complaint ¶83(j)). Allegations of sexual abuse in and of themselves will not sustain a cause of action under the TVPRA. *See e.g.*, *Kaolbek v. Twenty-First Century Holiness Tabernacle Church, Inc.*, No. 10-CV-4124, 2013 WL 6816174, at *16 (WD. Ark. Dec. 24, 2013) ("The fact that sexual abuse was committed ... is simply not sufficient to establish a violation of 18 U.S.C. § 1591"). In addition, allegations of prostitution alone do not establish a § 1591 violation. *See e.g., United States v. Todd*, 627 F.3d 329, 333 (9th Cir. 2010) (holding that the TVPRA "deals with commerce within the power of Congress to regulate."). Because Plaintiff has not alleged that there has been a criminal § 1591 conviction as to her alleged traffickers and she has not plausibly alleged coercion to satisfy the criminal § 1591 requirements, her allegations do not give rise to a plausible inference of an underlying predicate violation of § 1591 as required. As a result, this Court need not go any further in its evaluation of Plaintiff's TVPRA claim.

> 2.    Plaintiff fails to plausibly allege any "knowing benefit from participation" by Gulfcoast Inn Naples Defendants § 1595.

Even assuming Plaintiff has properly alleged a § 1591 predicate act, the Complaint does not properly allege liability under the TVPRA. In order to establish "venture liability," plaintiff must also allege that the defendant *knowingly benefitted* from *participating in the venture* that violated § 1591. *See* 18 U.S.C. § 1595(a) (emphasis added). Section 1595 does not define "participation in a venture." However, § 1591 defines the phrase as it relates to the criminal liability established within that section. There, § 1591 defines "participation in a venture" as "knowingly assisting, supporting, or facilitating" the underlying offense. 18 U.S.C. § 1591(e)(4). Some courts have applied this same definition to § 1595's establishment of civil liability; others have found § 1595 to lack § 1591's scienter requirement. *See Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 168 (S.D.N.Y. 2019) (applying § 1591's definition of participation to § 1595); *but see M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 969 (S.D. Ohio 2019) (finding that application of § 1591's scienter requirement to § 1595 would conflict with § 1595's liability for participants who merely "should have known" that the venture violated the TMPA).

This Court previously held that "actual 'participation **in the sex trafficking act itself**' is not required to state a claim under section 1595" but this Court has *not held* that that the word "participation" ought to be written out of the statute completely. *See S.K.*, 2020 WL 4504976, at *2. As such, the Court must first determine what meaning "participation" ought to be given (if not that which is expressly enumerated in § 1591), lest the term "participation" be improperly rendered as moot. "Courts must also give meaning to every word and clause in a statute." *Louis-Charles v. Sun-Sentinel Co.*, 595 F.Supp.2d 1304, 1309 (S.D. Fla. 2008)

(quotation omitted). In this case, whatever meaning is applied to "participation," it must be something more than constructive knowledge.

        a.      *Even using a plain language definition, "knowing benefit from participation" can never be satisfied by constructive knowledge alone.*

Plaintiff's claims fail even if the § 1591 definition is not applied to § 1595 because even under a plain language interpretation, there must be alleged *participation in the venture* and § 1595 liability only attaches if the defendant *knowingly benefitted from this participation*. 18 U.S.C. § 1595(a). "Participation" is most properly read in context with the prefatory phrase of "knowing benefit." As such, constructive knowledge alone will not suffice to meet this requirement, "a defendant's 'knowledge or willful blindness of a general sex trafficking problem ... does not satisfy the *mens rea* requirements' of a claim under the financial beneficiary prong." *See S.J. v. Choice Hotels International, Inc*., No. 19-cv-6071, 2020 WL 4059569, at *5 (E.D.N.Y. July 20, 2020).

        b.      *Mere "failure to prevent" is insufficient to satisfy the "knowing benefit from participation" prong.*

No matter what definition is applied to "participation," it must be something more than "inaction." Plaintiff also appears to conflate a "failure to prevent" standard with the language contained in § 1595 which requires a "knowing benefit" from "participation in a venture." Mere failure to prevent sex trafficking (or, as the Sixth Circuit has said, "mere negative acquiescence") does not satisfy the requirement-inaction does not equate to participation under the TVPRA. *United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016); *A.B.* v. *Marriott International, Inc*., No. 19-5770, 2020 WL 1939678, at *8 (E.D. Penn. April 22, 2020) ("We do not read the Act as requiring hotels (and other businesses or professions possibly earning

money from trafficking) to affirmatively stop the trafficking."); *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018). This is particularly true here, where Plaintiff admits the Gulfcoast Inn Naples Defendants may not have been able to prevent Plaintiff's alleged trafficking (Complaint ¶ 56).

    c.  *Rules of statutory construction dictate the use of the § 1591 definition and such use does not render the constructive knowledge language moot.*

   Respectfully, Gulfcoast Inn Naples Defendants asks this Court to reconsider if the application of the definition of "participation in a venture" as contained in § 1591 ought to apply to § 1595. While Plaintiff's claims fail even if the § 1591 definition is not applied as set out above, the rules of statutory interpretation support the view that it should apply. Acts of Congress should not be read as a series of unrelated and isolated provisions; instead, courts must adhere to the "normal rule of statutory construction" that "identical words used in different parts of the same act are intended to have the same meaning." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 570 (1995).

   Furthermore, applying the definition of "participation in a venture" as "knowingly assisting, supporting, or facilitating" the underlying offense (18 U.S.C. § 1591(e)(4)) does not render the "known or should have known" constructive knowledge language moot. This is because to the extent § 1595 applies a constructive knowledge requirement, it only applies a constructive knowledge standard to a single component of the statute-whether or

not a "sex trafficking" crime has occurred under § 1591.[5] *See* 18 U.S.C. § 1595. In other words, while the criminal statute requires actual knowledge or reckless disregard as to whether or not an alleged victim is a minor or subject to force, fraud or coercion, the civil statute only requires that a defendant "knew or should have known" whether or not an alleged plaintiff is a minor or subject to force, fraud or coercion. Limiting the constructive knowledge standard to only this question (as the plain language of the statute dictates) does not render the "should have known" language moot. To the contrary, expanding the constructive knowledge standard beyond this narrow issue to apply also to the "knowing benefit from participation in a venture" requirement makes both the terms "knowing" and "benefit" moot. Such a result is impermissible under the rules of statutory construction.

Applying the § 1591 definition to § 1595 also allows for a consistent statutory interpretation. This is because as other courts have found, "venture liability" under the TVPRA is triggered not merely by knowledge of a sex trafficking venture, but by "*knowingly benefit[ting]*, financially or by receiving anything of value *from participation in [the] venture*." 18 U.S.C. §1595(a) (emphasis added). "In other words, there must be a causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with actual or, in the civil context, constructive knowledge of that causal relationship." *Geiss v. Weinstein Co. Holdings LLC*, 383 F.Supp.3d 156, 169 (S.D.N.Y. 2019); *see also Doe 1*, 2020 WL 1872335, at *3 (quoting *Weinstein*, 335 F.Supp.3d at 524)

---

[5] As the Gulfcoast Inn Naples Defendants and other defendants have repeatedly explained, Section 1591(e)(4) does not apply in civil cases. While the Gulfcoast Inn Naples Defendants understands that this court disagrees per its prior order of dismissal, these defendants respectfully urges this court to reconsider and rule differently here.

("Association alone cannot establish liability; instead, knowledge and 'some participation in the sex trafficking act itself must be shown.'"); *Afyare*, 632 Fed. Appx. at 286 ("§ 1591(a)(2) targets those who participate in sex trafficking; it does not target [those] who turn a blind eye to the source of their financial sponsorship."). In *Geiss*, plaintiffs sought to hold the Weinstein Company Holdings, LLC, its officers, and its directors liable under the TVPRA for Harvey Weinstein's sex trafficking activities. 383 F.Supp.3d. at 156. The plaintiffs alleged, and the court accepted as true, that:

> [T]he TWC Defendants participated in H. Weinstein's sex-trafficking venture by helping to facilitate, clean up after, and cover up the assaults, and that they benefited from their participation because it ensured that Harvey Weinstein continued to produce movies, ensuring that TWC continued to make money or receive financing, the TWC Directors' investments ... continued to make money, the Directors and Officers continued to receive the social benefits and power within the film industry, and the TWC Officers continued to receive their paychecks, bonuses and other incentives.

*Id.* at 168 (internal citations omitted). Most of the individuals sued were alleged to have "involvement in the hush payments to Harvey's victims." *Id.* at n.4.

The *Geiss* court held that, even under these alleged facts, the plaintiffs had failed to state a claim against any of the defendants, individual or corporate, for participation in sex trafficking under the TVPRA. As an initial matter, the court observed that because "participation" in sex trafficking, as defined in the TVPRA, "requires 'assisting, supporting, or facilitating' sex trafficking," the individual defendants' "involvement in making hush payments to cover up sex trafficking is not sufficient to trigger liability under the TVPA." *Id.* (*quoting* § 1591(e)(4)). The "plaintiffs' failure to allege any benefits received by defendants from their participation [is] a deficiency that is fatal to all of plaintiffs' claims under [the TVPRA.]" *Id.* at 168-69. The court

also held that "[t]he participation giving rise to the benefit must be participation *in a sex-trafficking venture*," and the court reasoned that there were no facts alleged in the plaintiffs' amended complaint to plausibly support this conclusion:

> The TWC Defendants undoubtedly benefited from H. Weinstein's continued employment at TWC. His movies and influence generated revenue, and some of that revenue flowed to TWC's officers and directors. The controlling question, however, is whether H. Weinstein provided any of those benefits to TWC *because of* TWC's facilitation of H. Weinstein's sexual misconduct. The FAC pleads no facts that would plausibly support such a conclusion. To the contrary, plaintiffs' allegations suggest that H. Weinstein benefited TWC *in spite of* his alleged predations, which caused many women not to work with TWC, diverted company resources toward supervision of H. Weinstein and away from business activities, and exposed TWC to potential liability.

*Id.* at 169-70. Thus, a film company, by financially benefitting from the licit production of films that an employee-producer exploited for a sex trafficking venture, does not knowingly benefit from participation in a sex trafficking venture. In the same way, neither does a Hotel, by benefitting from the overall rental of rooms, knowingly benefit from participation in a sex trafficking venture. This is particularly true here, where, unlike the plaintiffs in *Geiss*, Plaintiff has not alleged that The Gulf Coast Inn Defendants "participated in [the] sex-trafficking venture by helping to facilitate, clean up after, and cover up assaults." *Id.* Indeed, the only substantive facts alleged about The Gulf Coast Inn Defendant's supposed participation in the alleged "venture" concern is that upon in formation and belief they failed to notice the alleged sex trafficking activity.  *See generally* Complaint. These allegations demonstrate considerably less involvement by Gulfcoast Inn Naples Defendants than by the Weinstein Company officers and directors who made hush money arrangements for Weinstein's victims-all of whom the *Geiss*

court found did not knowingly receive a benefit by "participating" in Weinstein's venture within the meaning of the TVPRA.

*d.*      *The Complaint fails to plausibly allege a "venture."*

The Complaint also fails to allege any "venture" whatsoever between the Gulfcoast Inn Naples Defendants and the alleged non-party traffickers. To establish that persons are "associated in fact," they must operate as "a continuing unit that functions with a common purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). The Supreme Court has enumerated three required structural features for an "association in fact," which requires: (1) a purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit those associations to pursue the enterprise's purpose. *Id*. at 946-47. Plaintiff has failed to plausibly allege that the Gulfcoast Inn Naples Defendants was "associated in fact" with Plaintiff's non-party traffickers. Likewise, Plaintiff has failed to allege that, together, the Gulfcoast Inn Naples Defendants and Plaintiff's alleged traffickers were "a continuing unit that functions with a common purpose."

3.      <u>Plaintiff fails to plausibly allege any constructive knowledge by the Gulfcoast Inn Naples Defendants under § 1595.</u>

Plaintiff must allege that a defendant had actual or constructive knowledge ("knew or should have known") that the venture in which they were participating violated § 1591 of the TVPRA. In this case, because she was an adult, Plaintiff must allege that Gulfcoast Inn Naples Defendants knew or should have known that it was participating in a venture wherein Plaintiff was being coerced to engage in commercial sex acts. No such plausible facts have been alleged.

To satisfy this element, "a plaintiff must plead facts showing that the defendant knew or should have known of sex *trafficking by the particular venture in which the defendant*

17

*allegedly participated.*" *H.G. v. Inter-Continental Hotels Corporation*, No. 19-cv-13622, 2020 5653304, at *5 (E.D. Mich. Sept. 23, 2020) (emphasis in original); *A.B.,* 2020 WL 5371459, at * 9 (dismissing TVPRA claim where "although Plaintiff's allegations indicate that Defendants had notice of sex trafficking generally occurring at their hotels, Plaintiff has not alleged facts which sufficiently link notice of Plaintiff A.B.'s sex trafficking to any of these defendants."); *B.M.*, 2020 WL 4368214, at *6 ("Plaintiff must allege facts showing these Defendants knew or should have known of her trafficking"); *S.J.*, 2020 WL 4059569, at *5 ("The real issue is not, then actual-versus-constructive knowledge but whether a defendants satisfies the knowledge element as to a particular sex trafficking venture... Therefore, knowledge or willful blindness of a general sex trafficking problem in low-budget lodgings does not satisfy the *mens rea* requirements of the TVPRA."); accord. *Florida Abolitionist v. Backpage.com LLC*, No. 617CV218ORL28TBS, 2018 WL 1587477, at *5 (M.D. Fla. Mar. 31, 2018) (dismissing TVPRA claim where complaint did "not include a plausible allegation that Defendants saw the ad concerning Plaintiff Doe and knew it related to illegal sex trafficking").

Allegations of actual or constructive notice of sex trafficking (as opposed to simply prostitution) occurring through a heretofore unnamed "venture" is necessary to, in turn, establish a claim against Gulfcoast Inn Naples Defendants under the TVPRA. 18 U.S.C. §§ 1591(a)(2); 1595(a). Regardless of whether Plaintiff has adequately pled constructive awareness of trafficking or prostitution generally at hotels or even constructive awareness that she was being sexually mistreated while allegedly staying at Gulfcoast Inn Naples, it does not necessarily follow that she has adequately pled constructive knowledge of the alleged *sex trafficking* within the meaning of the TVPRA. A defendant's "ability to inspect the premises," alone, is insufficient

to confer constructive knowledge of trafficking-even if indicia of abuse are present. *Doe 1*, 2020 WL 1872335 at *3.

At most, Plaintiff's allegations speak to constructive knowledge of Gulfcoast Inn Naples Defendant's general knowledge that prostitution and sex trafficking occurs around the world at all hotels (Complaint ¶ 3). Plaintiff's allegations, however, do not speak to Gulfcoast Inn Naples Defendant's constructive knowledge of *sex trafficking* of this Plaintiff, which is the prerequisite for liability under § 1595(a).

Significantly, Plaintiff alleges that both the Naples Police and the Collier County Sherriff's Office were aware of the alleged activity occurring at the hotel and that they were present at the hotel during "routine patrols." Complaint ¶¶ 87, 88. Despite the actual knowledge and presence of law enforcement on the premises, they were apparently unable to prevent the alleged trafficking of Plaintiff. Yet, Plaintiff contends that Gulfcoast Inn Naples Defendant's not only knew or should have known of a § 1591 crime committed against Plaintiff but also had an affirmative duty to prevent it-something not even highly trained law enforcement present in the hotel were able to do.

Plaintiff alleges that the Gulfcoast Inn Naples Defendant's participated in a venture "by engaging in a pattern of acts and omissions that were intended to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of the Plaintiff C.S. for commercial sexual exploitation by repeatedly renting rooms at the Hotel [sic] to people who the Defendants knew or should have known were engaged in sex trafficking." Complaint ¶ 139. Aside from being entirely vague and conclusory, Plaintiff is merely reciting the elements of a cause of action for venture liability. Plaintiff has failed to allege that Gulfcoast Inn Naples Defendants

intended to enter into a venture with Plaintiff's traffickers-nor could she. Likewise, Plaintiff has failed to allege Gulfcoast Inn Naples Defendants had joint control or joint right of control over the venture. "For joint venture purposes, the parties must have mutual control over the subject matter of the venture and the authority to bind one another with respect to the subject matter of the venture." *Skeen*, 2009 WL 1117432, at *3 (quotation omitted). Plaintiff has not alleged what the "subject matter" of the purported venture is; however, Plaintiff has not alleged that Gulfcoast Inn Naples Defendants had significant control over the plaintiff, the plaintiff's "clients," or the plaintiff's traffickers. Further, the subject matter of the purported venture cannot plausibly be profits as Plaintiff seemingly alleges or the hotel at issue.

4.   There is no vicarious liability under the plain meaning of the TVPRA, and even if there were, Plaintiff's allegations fail to plausibly allege vicarious liability.

Congress has not enacted a civil aiding and abetting statute for suit by private parties. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994); *see also Jean-Charles v. Perlitz*, 937 F.Supp.2d 278, 281 (D. Conn. 2013) ("Statutory silence on the subject of secondary liability means there is none.") (internal quotations omitted). When Congress enacts a statute under which a person may sue and recover for damages, there is no general presumption that the plaintiff may also sue aiders and abettors. *Id.*; *see also Electronic Laboratory Discovery Co. v. Cullen*, 977 F.2d 798, 805-806 (3d Cir. 1992). "Congress instead has taken a statute-by-statute approach to civil aiding and abetting liability." *Id*. Congress's statute-by-statute approach speaks against any general presumption of indirect liability for violations of civil statutes. *Pimental v. Aloise*, No. 18-cv-00411-EMC, 2018 WL 6025613, at *21 (N.D. Cal. Nov. 16, 2018) (citing Central Bank of Denver, N.A., 511 U.S. at

192). Congress chose specifically to impose secondary forms of liability within certain statutes but not others; this indicates a congressional choice with which courts should not interfere. *Id.*

Even assuming, *arguendo*, the TVPRA allows a cause of action based on an indirect theory of liability, Plaintiff still fails to plausibly plead her claims. Plaintiff offers mere conclusory allegations that the Hotel or its employees were in some way involved in this venture.

B.   **Plaintiff's Complaint fails to state a plausible RICO claim.**

1.   <u>Plaintiff does not have standing to bring a Florida RICO claim.</u>

All injuries cannot be remedied by RICO. *See Avirgan v. Hull*, 691 F.Supp. 1357, 1363 (S.D. Fla. 1988). A plaintiff must show that she has standing to bring a civil RICO claim, which requires "(1) the requisite injury to business or property, and (2) that such injury was by reason of the substantive RICO violation." *Fernau v. Enchante Beauty Products, Inc.*, No. 18-cv-20866, 2019 WL 5269427, at * 3 (S.D. Fla. Sept. 17, 2019). Injury to business or property excludes personal injuries and pecuniary loss stemming from personal injuries. *See Grogan v. Platt*, 835 F.2d 844, 847 (11th Cir. 1988); *see also Pilkington v. United Airlines*, 112 F.3d 1532, 1536 (11th Cir. 1997) (monetary damages arising from personal injuries not recoverable under RICO). Plaintiff's alleges personal injuries; accordingly, Plaintiff's injuries are not of the type that can be remedied by RICO and Plaintiff lacks standing.

2.   <u>Plaintiff failed to plausibly allege the existence of a valid RICO "enterprise."</u>

Plaintiff's RICO claims requires Plaintiff to plausibly allege that Gulfcoast Inn Naples Defendants endeavored, conspired, or actually (1) acquired or maintained (2) an interest in, or control of, (3) an enterprise through a (4) pattern of (5) criminal activity which, (6) injured the Plaintiffs. *See Meridian Trust Co. v. Batista*, No. 17-23051, 2018 WL 46963533, at *7 (S.D.

Fla. Sept. 26, 2018). The Florida RICO Act is largely patterned after the Federal RICO Statute, and Florida RICO cases follow Federal RICO cases. *Ferrell v. Durbin*, 311 F. App'x 253, 256 (11th Cir. 2009). Accordingly, analysis of Federal RICO claims is equally applicable to the analysis of Florida RICO claims. *Id*.

> A "enterprise" under the Florida RICO Act includes:
>
> any individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals *associated in fact* although not a legal entity; and the term includes illicit as well as licit enterprises and governmental, as well as other, entities.

Fla. Stat. § 772.102(3) (emphasis added). An "association-in-fact" is "any group of persons associated together for a common purpose of engaging in a course of conduct." *Al-Rayes v. Willingham*, 914 F.3d 1302, 1307 (11th Cir. 2019) (citation omitted).

The Supreme Court has found that an association-in-fact enterprise must have at least three structural features: (1) a purpose, (2) relationships among those associated with the enterprise, and (3) longevity sufficient to permit the associates to pursue the enterprise's purpose. *Boyle*, 556 U.S. at 944. Accordingly, an "association" requires both interpersonal relationships and a common interest. *Al-Rayes*, 914 F.3d at 1307. To satisfy the "common interest" requirement, Plaintiff must establish "not only that there was some commonly shared purpose among [the alleged associates], but also that they associated together for that purpose." *Lockeed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1362 (M.D. Fla. 2005). If an association-in-fact does not have sufficient relationships among the associates, it lacks the structure needed to be legally cognizable. *Almanza v. United Airlines, Inc.,* 851 F.3d 1060, 1067-68, 851 F.3d at 1067-68. To be a sufficient relationship, the group must function as a continuing unit, not

22

merely through independent parallel conduct. *Boyle*, 556 U.S. at 948; *Almanza*, 851 F.3d at 1068.

Plaintiff has alleged no set of facts that would demonstrate a sufficient relationship between the Gulfcoast Inn Naples Defendants and Plaintiff's alleged traffickers. Plaintiff does not allege any facts to show the Gulfcoast Inn Naples Defendants and Plaintiff's trafficker had any relationship or functioned as a continuing unit. At most, Plaintiff's allegations allege independent parallel conduct, which is insufficient to plausibly set forth a RICO enterprise.

Further, "where a business is alleged to be involved in a RICO enterprise, there must be evidence of some activity that goes *beyond general, self-interested business activity.*" *Aim Recycling of Florida, LLC v. Metals USA, Inc.*, No. 18-cv-60292, 2020 WL 209860, at *15 (S.D. Fla. Jan. 13, 2020) (emphasis added); *see also United Food & Commercial Workers Unions & Emp'rs Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013) (noting the lack of support for the proposition "that these communications or actions were undertaken on behalf of the enterprise as opposed to on behalf of Walgreens and Par in their individual capacities, to advance their individual self-interests"); *Parm v. Nat'l Bank of Cal. N.A.*, 242 F. Supp. 3d 1321, 1347 (N.D. Ga. 2017) ("Even if Defendant used fraudulent means to carry out those activities, the activities constituted Defendant's own business affairs, not acts to further the goals of a separate enterprise."); *Singh v. NYCTL 2009-A Tr.*, 14 Civ. 2558, 2016 WL 3962009, at *10 (S.D.N.Y. July 10, 2016) ("the mere existence of routine business relationships among the defendants is insufficient to establish an `enterprise' under RICO"). Plaintiff has not alleged *any* activity by the Gulfcoast Inn Naples Defendants that goes beyond general, self-interested business activity-nor can she.

Finally, the purpose of Florida's RICO Act is to target organized crime and its infiltration and corruption of legitimate business. *See* ch. 77-334, preamble, at 1400, Laws of Fla.; *see also Hagopian v. Justice Administrative Com'n*, 18 So.3d 625, 640 (Fla. 2d DCA 2009). Thus, a civil RICO claim does not target an enterprise; instead, it targets the bad actors who misuse or wrongfully acquire or invest in a legitimate enterprise. *See United States v. Turkete*, 452 U.S. 576, 591 (1981); *Fitzgerald v. Chrysler Corp*., 116 F.3d 225, 227 (7th Cir. 1997) (describing RICO cases as ones in which a person "bent on criminal activity" uses control of a legitimate business to perpetuate criminal activities). Gulfcoast Inn Naples Defendants is a legitimate business entity. Plaintiff's alleged traffickers, however, perpetuated criminal activities at a hotel with the intent to benefit from criminal activity. Plaintiff's allegations against Gulfcoast Inn Naples Defendants, even accepted as true, cannot be redressed by the Florida RICO statute.

       3.    <u>Plaintiff failed to plausibly allege a "pattern of racketeering activity."</u>

To support a civil RICO claim, the predicate racketeering acts "must not only be the 'but for' cause of the injury but the proximate cause as well." *Green Leaf Nursery v. E.I. DuPont De Nemours & Co*., 341 F.3d 1292, 1307 (11th Cir. 2003); *see also Holmes v. Secs. Investor Prot. Corp*., 503 U.S. 258, 267-74 (1992). "The connection between the racketeering activity and the injury can neither be remote, purely contingent, nor indirect." *Meridian Trust Co.*, 2018 WL 46963533, at *8. Accordingly, there must be "some direct relation between the injury asserted and the injurious conduct alleged . . . [and] a plaintiff who complained of harm flowing merely . . . [to] a third person by the defendant's acts was generally said to stand at too remote a distance to recover." *Holmes*, 503 U.S. 258 at 271. The central question is "whether the alleged violation

led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp*., 541 U.S. 451, 460 (2006). Harm that was merely "reasonably foreseeable" is insufficient. *See Palmas y. Bambu, S.A. v. E.I. Dupont De Nemours & Co., Inc.*, 881 So. 2d 565, 570 (Fla. 3d DCA 2004); *see also Bivens Gardens Office Bldg., Inc., v. Barnett Banks of Fla., Inc.,* 140 F.3d 898, 906, 908 (11th Cir. 1998).

Even if Plaintiff's harm was of the type that could be remedied under the Florida RICO statute, Plaintiff has not plausibly alleged actual and proximate causation by the defendants. Plaintiff has not alleged a direct relation between her injuries and the defendants purported violation of the Florida RICO statute. In fact, the conduct directly responsible for Plaintiff's alleged harm was the actions of her traffickers and the "Johns" that solicited sex from Plaintiff.

4.    <u>Plaintiff cannot state a plausible claim for RICO conspiracy.</u>

To establish a valid RICO conspiracy claim, a plaintiff is required to show: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, (d) damage to plaintiff as a result of the acts done under the conspiracy." *See Meridian Trust Co.*, 2018 WL 4693533, at *7. The touchstone of liability is the agreement to participate in a RICO conspiracy. *See Aim Recycling of Florida, LLC v. Metals USA, Inc.*, No. 18-cv-60292, 2020 WL 209860, at *19 (S.D. Fla. Jan 13, 2020); *see also O'Malley v. O'Neill*, 887 F.2d 1557, 1560 (11th Cir. 1989) (to assert a RICO conspiracy claim, the must be alleged "that would indicate that [defendants] were willing participants in a conspiracy"). General allegations of involvement or participation in a conspiracy are inadequate. *See e.g., Meridian Trust Co.*, 2018 WL 4693533, at *9. "A complaint must set forth clear, positive, and specific allegations of specific conspiracy." *Id.*; *see also Solomon v. Blue Cross and Blue Shield Assn.*, 574 F.Supp.2d 1288, 1291 (S.D. Fla. 2008)

(dismissing a RICO conspiracy claim because allegations were "merely conclusory and unsupported by any factual allegations."

Plaintiff has not made any allegation that the Gulfcoast Inn Naples Defendants explicitly agreed with Plaintiff's traffickers to commit an unlawful act or to commit a lawful act by unlawful means. Plaintiff's allegation that Gulfcoast Inn Naples conspired to participate in a RICO enterprise by "knowingly, or with reckless disregard, maintaining sex trafficking" is a recitation of the elements. Further, merely "maintaining" an enumerated act, even if true, does not demonstrate an explicit agreement to commit an unlawful act. Without any agreement to participate in a RICO conspiracy, it goes without saying that Gulfcoast Inn Naples Defendants could not have committed an act in furtherance of the conspiracy.

**C.** **Plaintiff fails to state a claim for premises liability or negligent hiring, supervision and retention.**

1.     The Statute of Limitations may bar Plaintiff's claims as alleged.

Plaintiff alleges she was trafficked from approximately 2013 through approximately February 2016 within her Complaint. Plaintiff filed her original complaint in Collier County, Florida on October 30, 2019. *See id.*

"An action founded on negligence" must be brought within four years. *See* Fla. Stat. § 95.11(3)(a). Plaintiff's conflicting allegations throughout her amended complaints make it impossible to decipher the actual dates she alleges trafficking occurred. However, even under the most liberal timeframe, these actions began more than four years from the filing of this lawsuit. Further, Plaintiff's Complaint fails to allege when she stayed at the alleged hotel, how long they stayed at the alleged hotel, or how frequently they visited. To the extent Plaintiff

visited the alleged hotel exclusively more than four years prior to the filing of this lawsuit, her claims are barred.

>   2.   <u>Plaintiff fails to state a claim against the defendants for negligent hiring, supervision, and retention.</u>

Plaintiff has indiscriminately lumped her claims for negligent hiring and negligent supervision/retention together in one cause of action. Negligent supervision is the same cause of action as negligent retention. *See Dep't. of Envtl. Prot. V. Hardy*, 907 So. 2d 655, 660 (Fla. 5th DCA 2005). Negligent hiring claims are an entirely separate claim from negligent supervision and retention. *See Grover v. Polk County Board of County Commissioners*, No. 8:18-cv-02454, 2020 WL 2307558, at *5 (M.D. Fla. May 8, 2020). Plaintiff has failed to state a claim under either cause of action.

>   a.   *Negligent Hiring*

A negligent hiring claim under Florida law requires a plaintiff to allege facts that:

> (1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known.

*N.R. by Ragan v. School Board of Okaloosa County, Florida*, 418 F.Supp.3d 957, 995 (2019) (citation omitted). Importantly, the "core predicate for imposing liability is one of reasonable foreseeability." *Id*. (citation omitted). The inquiry focuses on "whether the specific danger that ultimately manifested itself ... reasonably could have been foreseen at the time of hiring." *Id*. (citation omitted). "A claim for negligent hiring arises when, before the time the employee is

hired, the employer knew or should have known that the employee was unfit." International Security Management Group, Inc. v. Rolland, 271 So.3d 33, 49 (Fla. 3d DCA 2018).

Plaintiff does not identify any specific employee of the defendants that was allegedly negligently hired. Plaintiff does not even identify any specific employee of the hotel that the hotel negligently hired. Without allegations of a specific employee, there is no cause of action for negligent hiring because neither the defendant nor this Court could ascertain when the cause of action arose. The defendants cannot be "on notice" as required for pleadings by the federal rules and *Twombly* and *Iqbal* of the defendant's alleged acts if Plaintiff has not and cannot identify a specific employee of Gulfcoast Inn Naples Defendants that was hired as a result of the defendant's negligent actions.

In addition to her failure to specify any specific employee or agent, Plaintiff fails to plausibly identify how the hiring of an employee, who negligently allowed criminals to rent rooms for prostitution and sex (ECF No. 295, at nn 199, 205), lead to the foreseeable harm of Plaintiff. Even if Plaintiff could identify a specific employee of the defendants, she has not alleged that an appropriate investigation of the employee would have revealed the employee's unsuitability, or that it was unreasonable for the defendants to hire the specific employee in light of information the defendants should have known about the employee.

b.   *Negligent Supervision/Retention*

Negligent retention occurs when "during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment." *Degitz v. S. Mgmt. Servs., Inc.*, 996 F.Supp. 1451, 1461 (M.D. Fla. 1998).

Negligent retention, however, "requires that an employee's wrongful conduct be committed outside the scope of employment." *Yule v. Ocean Reef Community Association*, No. 19-10138, 2020 WL 3051505, at *9 (S.D. Fla. June 8, 2020).

For similar reasons that Plaintiff's negligent hiring claims fails, so to does her negligent retention claim. Plaintiff has not alleged any *specific employee* of the defendant was negligently retained. Plaintiff does not even identify any *specific employee* of the hotel that the hotel negligent retained. Further, Plaintiff has not alleged whether the actions of the unidentified employee were within the unidentified employee's "scope of employment." Courts have repeatedly dismissed negligent retention claims "where a plaintiff fails to allege that the employee's tortious conduct was 'outside the scope' of their job duties." *Yule*, 2020 WL 3051505, at *10; *see also Whitaker v. Miami-Dade County*, 126 F.Supp.3d 1313, 1329 (S.D. Fla. 2015) (dismissing negligent retention claim with prejudice where plaintiffs alleged that "officers were acting within the scope of their employment"). Plaintiff does not specify whether her allegations against unidentified employees were made within the course of employment or outside the course of employment in any paragraph of her Complaint.

While Plaintiff does allege that "[u]pon information and belief, each and every Gulfcoast Inn Naples Defendant's agents and employees made promises to the Plaintiff's sex traffickers not to interfere with the Plaintiff...." (Complaint ¶ 75) and "[u]pon information and belief, some of the 'Johns' visiting the Plaintiff while on the premises of the Hotel, were staff, agents, and/or employees of the Defendants" (*Id*. ¶ 78), these allegations are non-specific, conclusory, and contradictory. As already discussed, *supra*, allegations based "upon information and belief" are not entitled to a presumption of the truth in pleading. Additionally, a plain reading of

Plaintiff's allegations implies that each and every employee of the defendants made promises to Plaintiff's traffickers *and* that each and every employee made promises to Plaintiff's traffickers not to interfere. Plaintiff's allegation far exceeds the limits proper pleading and has no basis in fact as shown by Plaintiff's use of "upon information and belief." Plaintiff's allegations are not owed the deference of truth for purposes of the Defendant's Motion to Dismiss, and without any *specific*, factual allegations of *specific* employees that acted *specifically* outside the scope of their employment, Plaintiff's claim fails.

        3.    <u>Plaintiff fails to state a claim against Gulfcoast Inn Naples for premises liability.</u>

Premises liability refers to a "landowner's or landholder's tort liability for conditions or activities on the premises." *See, e.g., Jones v. Discount Auto Parts, LLC*, No. 6:16-cv-138, 2017 WL 1396477, at *3 (M.D. Fla. April 19, 2017) (quoting *Premises Liability*, Black's Law Dictionary (9th ed. 2009)). A premises liability claim is a "negligence claim with the added elements of possession/control of the premises, and notice of the dangerous condition." *Oliver v. Winn-Dixie Stores, Inc.*, 291 So.3d 126, 128 (Fla. 4th DCA 2020). However, even a property owner "is ordinarily under no duty to exercise any care to warn or guard against the harmful acts of a third party unless that third party's harmful behavior is reasonably foreseeable." *Leitch v. City of Delray Beach*, 41 So. 3d 411, 412 (Fla. 4th DCA 2010). A premises liability claim requires a defendant to be in "actual possession or control to perform its legal duty." *Walker v. Super 8 Worldwide, Inc.*, No. 6:08-cv-552, 2012 WL 13102078, at *3 (M.D. Fla. June 21, 2012); *see also Welch v. Complete Care Corp.*, 818 So.2d 645, 649 (Fla. 2d DCA 2002) ("This is because premises liability is not predicate on ownership of the property, but on the failure of the possessor of the property to use due care." (citation omitted)).    The plaintiff makes

numerous allegations about the actions of the plaintiff's and the sex traffickers, upon information and belief.  They have no evidence to set forth that the defendants were on notice of their activities.  They make general allegations which are the same against each of the hotels, with no specific instances which may have put the defendants on notice of a dangerous condition that they had the power to remedy.

### D.      **Plaintiff has not properly plead that anonymity is necessary.**

A plaintiff is not entitled to proceed anonymously in court proceedings as a matter of right. *See* FED. R. Civ. P. 10(a). Rule 10(a) provides that "[in] the complaint the title of the action shall include the names of all the parties." *Id*. Accordingly, there is a strong presumption in favor of parties proceeding under their own names. *See Plaintiff B. v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011). A party may only proceed anonymously by making a requisite showing of a "substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Id*. at 1315-16 (quotation omitted). This is a narrow exception and is only used in "exceptional cases." *See In re: Chiquita Brands International, Inc.*, 964 F.3d 1238, 1246 (11th Cir. 2020). Plaintiff has not moved for leave to proceed under a pseudonym, nor do Plaintiff's allegations show a specific and demonstrable need to remain anonymous. The Defendant respectfully asks that this Court require Plaintiff to move to proceed anonymously so that the parties may adequately brief the issues.

### IV. CONCLUSION

Finally, because the Complaint is Plaintiff's fourth attempt-and fourth failure-at pleading, (although this is the first complaint after the court ordered severance of the cases) her claims are now due to be dismissed *with prejudice*. *See e.g.*, *Eiber Radiology, Inc. v.*

*Toshiba America Medical Sys.'s, Inc.*, 673 Fed. Appx. 925, 929-30 (11th Cir. 2016) ("We have never required district courts to grant counseled plaintiffs more than one opportunity to amend a deficient complaint, nor have we concluded that dismissal with prejudice is inappropriate where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so."). For all the foregoing reasons, Gulfcoast Inn Naples Motion to Dismiss Plaintiff's Complaint should be granted, and all claims asserted against Gulfcoast Inn Naples Defendants should be dismissed with prejudice, and any other relief this Court deems proper.

CASE NO:  2:20-CV-0631-FTM-29MRM

**Local Rule 3.01(g) Certification**

Counsel for the undersigned communicated with counsel for Plaintiffs prior to filing, and counsel has no objections as to Defendants' Motion for an Over-Length Motion to Dismiss with Memorandum in Support.

DATED:  October 12, 2020

Respectfully submitted,

 _/s/  Cristobal A. Casal___
Cristobal A. Casal, Esquire
FBN:  12261
ccasal@conroysimberg.com
CONROY SIMBERG
4315 Metro Parkway – Suite 250
Fort Myers, FL  33916
Telephone:  (239) 337-1101
Facsimile:   (239) 334-3383
*Attorneys for NAPLES HOTEL COMPANY and THE GULFCOAST INN OF NAPLES OWNERS ASSOCIATION, INC.*

CASE NO:  2:20-CV-0631-FTM-29MRM

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on ___October 12, 2020___, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.  I further certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_/s/  **Cristobal A. Casal**___
Cristobal A. Casal, Esquire
FBN:  12261
ccasal@conroysimberg.com
CONROY SIMBERG
4315 Metro Parkway – Suite 250
Fort Myers, FL  33916
Telephone:  (239) 337-1101
Facsimile:   (239) 334-3383
*Attorneys for NAPLES HOTEL COMPANY and THE GULFCOAST INN OF NAPLES OWNERS ASSOCIATION, INC.*

CASE NO:  2:20-CV-0631-FTM-29MRM

## SERVICE LIST

C.S. V. NAPLES HOTEL COMPANY, ET AL
Case No:  2:20-CV-0631-FTM-29MRM
United States District Court, Middle District of Florida

Sharon M. Hanlon, Esquire
Law Office of Sharon M. Hanlon, P.A.
5633 Naples Boulevard
Naples, FL 34109-2023
Attorney for Plaintiffs
Phone:  239-598-3222 - Gina
Fax:  239-598-9002
Email:
SHARON@ZELMANANDHANLON.COM
Served via electronic filing

Michael A London, Esq
Douglas & London, PC
59 Maiden Lane, 6th Floor
New York, NY 10038
Additional Counsel for Plantiff
Phone:  212-566-7500
Email:  mlondon@douglasandlondon.com
Served via electronic filing

Yale T. Freeman, Esq.
Yale T. Freeman, P.A.
999 Vanderbilt Beach Rd
Suite 200
Naples, FL 34108-3512
Attorney for Plaintiffs
Phone:  239-530-2500
Email:  YTFreeman@YTFreemanlaw.com
Served via electronic filing

CASE NO:  2:20-CV-0631-FTM-29MRM

Diana Yastrovskaya, Esq
Douglas & London, PC
59 Maiden Lane, 6th Floor
New York, NY 10038
Additional counsel for Plaintiff
Phone:  212-566-7500
Fax:  Email:
DYASTROVSKAYA@douglasandlondon.com
Served via electronic filing