UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

C. S.,

      Plaintiff,

v.                              Case No: 2:20-cv-631-JES-MRM

NAPLES HOTEL COMPANY and
THE GULFCOAST INN OF NAPLES
OWNERS ASSOCIATION, INC.,

      Defendants.

_____

## OPINION AND ORDER

This matter comes before the Court on defendants' Motion to Dismiss (Doc. #12) filed on October 12, 2020. Plaintiff filed an opposition (Doc. #23) on November 10, 2020.

### I.

The origins of this case began on October 30, 2019, when plaintiff and another alleged victim of sex trafficking filed a case in the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida. See S.Y. et al v. Naples Hotel Co. et al, Case No. 2:20-cv-118 (Doc. #1, p. 3). On December 31, 2019, the plaintiffs filed a First Amended Complaint which asserted ten claims against over forty defendants. Id. at (Doc. #1, pp. 2-4). The case was removed to federal court in February 2020. Id. at (Doc. #1). On April 15, 2020, the plaintiffs filed a Second Amended Complaint. Id. at (Doc. #85). On August 5, 2020, the

undersigned denied various motions to dismiss, but determined severance of the parties was appropriate.  S.Y. v. Naples Hotel Co., 476 F. Supp. 3d 1251, 1258-59 (M.D. Fla. 2020).  Following the Court's severance order, plaintiff and the other alleged victim filed nearly thirty new actions against various defendants, including this case.

The Complaint (Doc. #1) in this case was filed on August 19, 2020, and alleges that between 2015 and February 2016, plaintiff C.S., a resident of Collier County, Florida, was a victim of continuous sex trafficking at every Gulfcoast Inn Naples, owned and operated by defendants Naples Hotel Company and The Gulfcoast Inn of Naples Owners Association, Inc.  (Id. ¶¶ 2, 13, 22-25.) The Complaint alleges that during this time period, both Florida corporations were doing business as Gulfcoast Inn Naples in Naples, Florida.  (Id. ¶¶ 26-28.)

The Complaint alleges the following six claims against "each and every Gulfcoast Inn Naples": (1) violation of the Trafficking Victims Protection Reauthorization Act of 2008 (TVPRA), 18 U.S.C. § 1595; (2) violation of the Florida RICO statute, § 772.104, Florida Statutes; (3) premise liability; (4) negligent hiring, supervision, and retention; (5) negligent rescue; and (6) aiding and abetting, harboring, confining, coercion, and criminal enterprise.  (Id. pp. 36, 41-48.)

## II.

The motions raise numerous arguments as to why the Complaint as whole, and each individual claim, should be dismissed.  The Court will address each of these arguments in turn.

### A. Shotgun Pleading

Defendants argue that the Complaint is "an indecipherable pleading" and "continues to be a prohibited shotgun pleading." (Doc. #12, pp. 1-2.)  The Complaint identifies the defendants collectively as the "Gulfcoast Inn Naples Defendants."  (Doc. #1, p. 1, introductory paragraph.)  Defendants argue the allegations are conclusory and "directly contradictory", and that the Complaint groups the defendants together in a conclusory fashion treating separate defendants as a single entity, and it should be dismissed as a shotgun pleading.  (Doc. #12, pp. 2, 5.)

One way in which a complaint may constitute an impermissible shotgun pleading is if it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."  Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015); see also Barmapov v. Amuial, 986 F.3d 1321, 1324-25 (11th Cir. 2021).  Such a pleading fails "to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," Weiland, 792 F.3d at 1323, and  violates the requirement that a

plaintiff provide "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2).

The Complaint does indeed repeatedly refer to the defendants collectively as the "Gulfcoast Inn Naples Defendants".   The failure to specify a particular defendant is not fatal, however, when "[t]he complaint can be fairly read to aver that all defendants are responsible for the alleged conduct." Kyle K. v. Chapman, 208 F.3d 940, 944 (11th Cir. 2000).   The Complaint typically (but not always) alleges that "each and every" such defendant was involved in the activity described in the particular paragraph of the Complaint.   A fair reading of the Complaint is that each of these defendants was involved in the identified conduct attributed to the "Gulfcoast Inn Naples Defendants." See, e.g., "At all times material to this complaint, Defendant Naples Hotel Company and Defendant The Gulfcoast Inn of Naples Owners Associations, Inc. were collectively doing business as the Gulfcoast Inn Naples in Naples, Florida, and, upon information and belief, were authorized to do, licensed to do, and were doing business in the State of Florida offering the Gulfcoast Inn Naples as a place of public lodging." (Doc. #1, ¶ 28.)   While the defendants may disagree that such allegations are accurate, that dispute is for another day.   The group allegations do not fail to state a claim, Auto. Alignment & Body Serv., Inc. v. State Farm

Mut. Auto. Ins. Co., 953 F.3d 707, 732–33 (11th Cir. 2020), and the Complaint does not constitute a shotgun pleading.

## B. Failure to State a Claim

Defendant argues that the Complaint fails to "set out any facts" to support liability under any of the counts. (Doc. #12, p. 9.) Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555; see also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff, Erickson v. Pardus, 551 U.S. 89, 94 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations

omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.  Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible.  Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (citations omitted).  Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

### (1)   Trafficking Victims Protection Reauthorization Act

Defendants challenge the one federal claim alleging a violation of the TVPRA set forth in Count One.  The TVPRA provides a civil remedy to victims of certain types of human trafficking. The civil remedy portion of the Act provides:

> (a) An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).  The phrase "a violation of this chapter" refers to Chapter 77 of Title 18 of the United States Code.  The only violation of Chapter 77 relevant to this case is contained in 18 U.S.C. § 1591(a), which provides in relevant part:

(a)   Whoever knowingly –

(1) in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

18 U.S.C. § 1591(a).  To state a section 1595(a) claim in this case, plaintiff must plausibly allege that she was a victim of a criminal offense under section 1591(a), and then must plausibly allege that defendant (1) "knowingly benefit[ted] financially or by receiving anything of value," (2) from participation in a venture, (3) which defendant "knew or should have known has engaged in" sex trafficking under section 1591(a).  S.Y., 476 F. Supp. 3d at 1255-56 (citing A.B. v. Marriott Int'l, Inc., 455 F. Supp. 3d 171, 181 (E.D. Pa. 2020)).

### (a)   Plausible Allegations Re: § 1591 Violation

Defendants argue that plaintiff fails to allege an underlying § 1591 violation by alleging a criminal conviction as to the

alleged traffickers as in other cases.   (Doc. #12, pp. 9-10.)
Plaintiff alleges:

> 70. From approximately 2013 through February
> 2016, Plaintiff C.S. was recruited to, enticed
> to, solicited to, held at, harbored as captive
> at and/or transported to various hotels in
> Naples, Florida by her sex traffickers to
> engage in commercial sex acts at these hotels
> on a regular, consistent and/or repeated
> basis, and from approximately 2015 to 2016,
> Plaintiff C.S. was trafficked by Gregory Hines
> (aka Bowlegs), Keith Lewis, and others at the
> Gulfcoast Inn Naples.

(Doc. #1, ¶ 70.)  There is no requirement that the sex trafficker
have been convicted criminally to support a civil claim against
defendants for knowingly financially benefitting from the sex
trafficking, and defendants provide no legal support for this
argument.[1]

Defendants also argue that plaintiff has not alleged coercion
giving rise to an underlying violation of § 1591.   (Doc. #12, pp.
9-10.)  Defendants argue that plaintiff was free to meet the 'John'
in the lobby, and she could walk the hallways without confinement.

> For purposes of § 1591, "coercion" is defined
> as (1) "threats of serious harm to or physical
> restraint against any person;" (2) "any
> scheme, plan, or pattern intended to cause a
> person to believe that failure to perform an
> act would result in serious harm to or
> physical restraint against any person"; or (3)
> "the abuse or threatened abuse of law or the

---

[1] The only citation is to a case where the Complaint was found
sufficient and plaintiff therein was able to represent that her
trafficker had been indicted.  M.A. v. Wyndham Hotels & Resorts,
Inc., 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019).

legal process." Id. § 1591(e)(2). "Serious harm," in turn, is "any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm." Id. § 1591(e)(4).

United States v. Williams, 714 F. App'x 917, 918 (11th Cir. 2017). The allegations in the Complaint are more than conclusory with regard to the threats of serious harm or physical restraint, and does not only allege sexual abuse and prostitution.  (Doc. #12, p. 10.)  Some of the relevant allegations are as follows:

> 44. At all material times, each and every Gulfcoast Inn Naples Defendant, as owners, operators, managers, supervisors, controllers and/or entities otherwise responsible for hotels, including the Gulfcoast Inn Naples, knew or should have known that traffickers were harboring, raping and assaulting victims at their hotels, including the Gulfcoast Inn Naples, and were forcing them to engage in "in call" services, wherein buyers ("Johns") would come to the hotels solely to purchase sex from these victims, as well as "out call" services, wherein the buyer would rent a hotel room and the trafficker would deliver the victim to the buyer's room to complete the sordid transaction.

> . . .

> 55. Each and every Gulfcoast Inn Naples Defendant, individually and by and through their actual or apparent agents, servants, employees and/or staff, were aware and/or should have been aware of a number of warning signs at their hotels, including the Gulfcoast Inn Naples, that indicated the presence of

human trafficking, including but not limited to:

a. persons showing signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

b. persons lacking freedom of movement or being constantly monitored;

c. persons having no control over or possession of money or ID;

d. persons dressing inappropriately for their age or having lower quality clothing compared to others in their party;

e. persons requesting room or housekeeping services (additional towels, new linens, etc.), but denying hotel staff entry into the room;

f. the presence of multiple computers, cell phones, pagers, credit card swipers, or other technology in the room;

g. persons extending stay with few or no personal possessions in the room;

h. excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion);

i. the same person reserving multiple rooms;

j. a room being rented hourly, less than a day, or for an atypical extended stay;

k. attempts of persons to sell items to or beg from patrons or staff;

l. cars in the parking lot regularly parked backward, so the license plates are not visible;

m. loitering and solicitation of male patrons;

n. individuals waiting at a table or bar and then being picked up by a male (trafficker or customer);

o. persons asking staff or patrons for food or money; and

p. persons taking cash or receipts left on tables.

. . .

121. Plaintiff C.S. was a hotel guest at the Gulfcoast Inn Naples and Plaintiff was seriously and permanently injured as a direct result of each and every Gulfcoast Inn Naples Defendants' acts and omissions, in that each and every Gulfcoast Inn Naples Defendant permitted, harbored and facilitated illegal sex trafficking ventures to take place at the Gulfcoast Inn Naples whereby the Plaintiff C.S. was routinely and continuously abused, battered, falsely imprisoned, raped, beaten, starved, forcibly injected with drugs and enslaved.

122. More specifically, at all material times, in the quest for profits, the acts and omissions of each and every Gulfcoast Inn Naples Defendant regarding the Gulfcoast Inn Naples caused the Plaintiff to suffer:

a. Forced labor;

b. Forced confinement without safe means of escape;

c. Assault and fear;

d. Sickness, dizziness and headaches;

e. Cuts, lacerations, abrasions and other physical harm;

f. Mental anguish, humiliation, exploitation, degradation and mental distress;

g. Suffocation, battery and rape;

h. Shock, fright and post-traumatic stress;

i. Overdose and drug-induced dangers (the Plaintiff suffered drug overdoses, drug-induced actions which caused harm to themselves, physical deformities and scarfing from actions of the "Johns" and drug usage); and

j. Invasion of privacy and wrongful entry of "Johns."

(Doc. #1, ¶¶ 44, 55, 121-122.)  The allegations are not "simply a regurgitation of the statutes' wording woven together with conclusory statements and a generous use of 'and/or.'"  Kelsey v. Goldstar Est. Buyers Corp., No. 3:13-CV-00354-HU, 2014 WL 1155253, at *6 (D. Or. Mar. 21, 2014).  The motion will be denied as plaintiff has stated plausible facts in support of a Section 1591 violation.

### (b)   "Participation" in a "Venture"

Defendants argue that plaintiff does not plausibly allege a venture, or a knowingly benefit from participation in the venture. (Doc. #12, pp. 11-17.)  Defendants argue that the application of the definition of "participation in venture" as contained in § 1591 should not be applied to § 1595.  (Id., p. 13-17.)

Drawing on the definition of "venture" used in the criminal portion of the statute, 18 U.S.C. § 1591(e)(6)[2], the motion asserts

---

[2] "The term 'venture' means any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(6).

that a "venture" requires two or more individuals "associated in fact."[3]  (Doc. #12, p. 17.)  As noted by defendants, the Court has concluded that "actual 'participation in the sex trafficking act itself' is not required to state a claim under section 1595." S.Y. v. Naples Hotel Co., 476 F. Supp. 3d 1251, 1256 (M.D. Fla. 2020).  However, defendants argue that the Court has not held that the word "participation ought to be written out of the statute completely."  (Doc. #12, p. 11.)

Here, the Complaint alleges the defendants participated in a venture "by engaging in a pattern of acts and omissions that were intended to support, facilitate, harbor, and otherwise further the traffickers' sale and victimization of the Plaintiff C.S. for commercial sexual exploitation by repeatedly renting rooms at Gulfcoast Inn Naples to people" the defendants "knew or should have known were engaged in sex trafficking."  (Doc. #1, ¶ 145.) Employees of Gulfcoast Inn Naples made promises to the sex traffickers to not interfere with C.S., "who was a victim of human sex trafficking and slavery."  (Id., ¶ 81.)  The Complaint also alleges why the defendants should have been on notice, "constructive or actual notice" of the sex trafficking and how

---

[3] The motion notes that applying the definition of "participation in a venture" from the criminal provision in section 1591(e)(4) does not render moot the "constructive knowledge language" moot from the civil statute. (Doc. #12, pp. 11-12.)

they failed to prevent it.  (Id. ¶¶ 4-5, 8, 42-44, 55, 71, 90, 97, 100, 116-117, 120, 127, 130, 143-144.)

The Court finds the allegations in the Complaint sufficient to allege participation in a venture under section 1595(a).  See Doe v. Rickey Patel, LLC, No. 0:20-60683-WPD-CIV, 2020 WL 6121939, at *5 (S.D. Fla. Sept. 30, 2020) ("The Court finds it sufficient for Plaintiff to plead that Defendants participated in a venture by renting rooms to individuals that knew or should have known were involved in a sex-trafficking venture, including the sex-trafficking victim."); M.A., 425 F. Supp. 3d at 971 ("This Court finds Plaintiff has alleged sufficient facts to show Defendants 'participated in a venture' under § 1595 by alleging that Defendants rented rooms to people it knew or should have known where [sic] engaged in sex trafficking.").  The motion will be denied on this basis.

### (c)  Knowingly Benefited From Participating in Venture

Defendants argue that the "knowing benefit from participation" cannot be satisfied by constructive knowledge alone, and "failure to prevent" is insufficient.  (Doc. #12, pp. 12-13, 17-20.)

The Complaint alleges the defendants knowingly benefited from the sex trafficking of plaintiff "by receiving payment for the rooms rented for Plaintiff C.S. and her traffickers at the Gulfcoast Inn Naples," and by receiving "other financial benefits

in the form of food and beverage sales and ATM fees from those persons who were engaging in sex trafficking." (Doc. #1, ¶ 143.) The Court finds such allegations sufficient to satisfy the "knowingly benefitted" element. S.Y., 476 F. Supp. 3d at 1257; Doe S.W. v. Lorain-Elyria Motel, Inc., 2020 WL 1244192, *5 (S.D. Ohio Mar. 16, 2020); H.H. v. G6 Hosp., LLC, 2019 WL 6682152, *2 (S.D. Ohio Dec. 6, 2019); M.A., 425 F. Supp. 3d at 965.

Defendants argue that mere failure to prevent is insufficient to satisfy the knowing benefit prong, and plaintiff argues that it is a willful blindness that is alleged, not just a failure to prevent. (Doc. #12, p. 12; Doc. #23, pp. 21-22.) The allegations above support a knowing financial benefit, and not just a mere failure to prevent. First of all, "knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); see Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC, 904 F.3d 1197, 1215 (11th Cir. 2018). Pleading "generally" is not without limits, and a complaint must still comply with "the less rigid—though still operative—strictures of Rule 8." Iqbal, 556 U.S. at 686-87. The Complaint clearly satisfies this notice pleading standard. See (Doc. #1, ¶¶ 93, 96-97, 100-101, 104, 111, 116-117.)

### (d) Vicarious Liability

Lastly, defendants argue there is no vicarious liability in the context of civil aiding and abetting statutes. (Doc. #12, pp.

20-21.)   The Court has previously noted that the question of whether an agency relation exists is a question of fact for the jury.  S.Y., 476 F. Supp. 3d at 1258 n.3.   Plaintiff did not "offer[] mere conclusory allegations" with regard to employees of the Gulfcoast Inn Naples, and provided specific examples.  (Doc. #1, ¶¶ 83 (promises not to interfere), 82 (staff would direct the 'John' to plaintiff's room), 89 (staff spoke to plaintiff and knew she stayed for extended times to carry out sex trafficking ventures), 91 (a list of the signs of a dangerous condition), and 120 (foreseeability).)   Because the allegations in the Complaint are sufficient to state a claim under section 1595 of the TVPRA, the Court denies the request for dismissal pursuant to Rule 12(b)(6).

### (2)   Florida RICO Violation

Count Two of the Complaint asserts a claim against the defendants under Florida's civil RICO statute, section 772.104, Florida Statutes.  (Doc. #1, p. 32.)   To state a claim under the statute, plaintiff must allege plausible facts showing "(1) conduct or participation in an enterprise through (2) a pattern of [criminal] activity."  Horace-Manasse v. Wells Fargo Bank, N.A., 521 F. App'x 782, 784 (11th Cir. 2013) (quoting Lugo v. State, 845 So. 2d 74, 97 (Fla. 2003)).[4]

---

[4] "Since Florida RICO is patterned after federal RICO, Florida courts have looked to the federal courts for guidance in

Defendants argue that plaintiff lacks standing because personal injuries cannot be remedied by RICO. (Doc. #12, p. 21.) There is some authority that notes that the Florida statute does not "expressly limit recovery" like the federal RICO statute, and that recovery for personal injuries may be allowed. <u>Berber v. Wells Fargo Bank, N.A.</u>, No. 16-24918-CIV, 2018 WL 10436236, at *3 (S.D. Fla. May 24, 2018) (collecting cases). The motion will be denied on this basis.

Defendants further argue that plaintiff has failed to allege the existence of an "enterprise", and plaintiff does not allege a relationship between plaintiff's trafficker and defendants. (Doc. #1, ¶¶ 21-24.)

Florida's RICO statute defines 'enterprise' to include a "group of individuals associated in fact although not a legal entity." § 772.102(3), Fla. Stat. "[A]n association-in-fact enterprise is simply a continuing unit that functions with a common purpose." <u>Boyle v. United States</u>, 556 U.S. 938, 948 (2009). To sufficiently plead such an enterprise, "a plaintiff <u>must</u> allege that a group of persons shares three structural features: (1) a purpose, (2) relationships among those associated with the

---

interpreting and applying the act. Therefore, federal decisions should be accorded great weight." <u>O'Malley v. St. Thomas Univ., Inc.</u>, 599 So. 2d 999, 1000 (Fla. 3d DCA 1992); <u>see also</u> <u>Cont'l 332 Fund, LLC v. Albertelli</u>, 317 F. Supp. 3d 1124, 1137 (M.D. Fla. 2018) ("[T]he Eleventh Circuit applies federal RICO analysis equally to Florida RICO claims.").

enterprise, and (3) longevity sufficient to permit these associates to pursue the enterprise's purpose." Cisneros v. Petland, Inc., 972 F.3d 1204, 1211 (11th Cir. 2020) (marks and citations omitted).

"The purpose prong contemplates 'a common purpose of engaging in a course of conduct' among the enterprise's alleged participants." Cisneros, 972 F.3d at 1211 (quoting United States v. Turkette, 452 U.S. 576, 583 (1981)). "An abstract common purpose, such as a generally shared interest in making money, will not suffice. Rather, where the participants' ultimate purpose is to make money for themselves, a RICO plaintiff must plausibly allege that the participants shared the purpose of enriching themselves through a particular criminal course of conduct." Id. (citations omitted).

Here, the Complaint alleges the defendants "associated with each other and/or the Plaintiff C.S.'s sex traffickers for the common purpose of profiting off an established sex trafficking scheme." (Doc. #1, ¶ 150, 155.) Plaintiff asserts this "association-in-fact" constitutes an "enterprise" under Florida's RICO statute, and that the defendants conducted or participated in their enterprises through a pattern of criminal activity, "related by their common purpose to profit off an institutionalized sex trafficking scheme." (Id. ¶¶ 150-151.) The Court finds these allegations sufficient to allege the defendants "shared the

purpose of enriching themselves through a particular criminal course of conduct." Cisneros, 972 F.3d at 1211; see also United States v. Church, 955 F.2d 688, 697-98 (11th Cir. 1992) (noting that "an association's devotion to 'making money from repeated criminal activity' . . . demonstrates an enterprise's 'common purpose of engaging in a course of conduct'" (citations omitted)); Burgese v. Starwood Hotel & Resorts Worldwide, Inc., 101 F. Supp. 3d 414, 424 (D. N.J. 2015) (on motion to dismiss Florida RICO claim, court found that "Plaintiff's Amended Complaint can be read to allege a 'common purpose' of furthering an institutionalized prostitution scheme to increase profits for the participants," and that "[t]hese allegations, though thin, are sufficient for purposes of this motion").

Defendants argue the Complaint fails to sufficiently plead the "pattern of criminal activity" element. (Doc. #12, pp. 24-25.) As previously stated, "[i]n order to state a civil cause of action under the Florida RICO Act, a plaintiff must allege a pattern of criminal activity." Arthur v. JP Morgan Chase Bank, NA, 569 F. App'x 669, 682 (11th Cir. 2014) (citing §§ 772.103-104, Fla. Stat.). The statute's definition of "criminal activity" provides "that a particular state law crime can serve as the predicate act for a RICO claim if it is 'chargeable by indictment or information' and falls within a series of specified provisions." Id. (citing § 772.102(1)(a), Fla. Stat.). "In order to establish

a pattern of criminal activity, the plaintiff must allege two or more criminal acts 'that have the same or similar intents, results, accomplices, victims, or methods of commission' that occurred within a five-year time span." Id. at 680 (citing § 772.102(4), Fla. Stat.).

Plaintiff's Florida RICO claim is predicated on the commission of human trafficking crimes in violation of section 787.06, Florida Statutes. (Doc. #1, ¶¶ 151, 152, 154); see also § 772.102(1)(a)15., Fla. Stat. (listing "human trafficking" under Chapter 787 among the types of "criminal activity" covered by the Florida RICO statute). This provision provides various punishments for "[a]ny person who knowingly, or in reckless disregard of the facts, engages in human trafficking, or attempts to engage in human trafficking, or benefits financially by receiving anything of value from participation in a venture that has subjected a person to human trafficking." § 787.06(3), Fla. Stat. Given the similarity between this language and the TVPRA's civil liability provision, the Court rejects defendants' argument as to the Florida RICO claim.[5]

---

[5] Defendants also argue that plaintiff cannot state a claim for RICO conspiracy. (Doc. #12, pp. 25-26.) Although plaintiff may have used the phrase "conducted or participated in, and/or conspired to conduct or participate in, the affairs of the RICO Enterprise", Doc. #1, ¶¶ 151, there does not appear to be a separate conspiracy claim within Count II.

### (3)  Premise Liability

Count Three of the Complaint asserts a claim of premise liability against each defendant.  (Doc. #1, p. 33.)  A premise liability claim is a form of negligence action.  "The elements for negligence are duty, breach, harm, and proximate cause; the additional elements for a claim of premises liability include the defendant's possession or control of the premises and notice of the dangerous condition."  Lisanti v. City of Port Richey, 787 So. 2d 36, 37 (Fla. 2d DCA 2001).  Plaintiff alleges the defendants owed her a variety of duties, that they breached these duties, and that as a direct and proximate result, she suffered bodily injury. (Doc. #1, ¶¶ 159-174.)  Plaintiff also alleges the defendants had actual or constructive knowledge of sex trafficking occurring on the premises, that they knew or should have known the risk of such criminal conduct taking place would be unreasonably high without appropriate precautions, and that they had actual or constructive knowledge of the dangerous conditions plaintiff was in.  (Id.  ¶¶ 167-168.)

### (a)  Statute of Limitations

Defendants argue the premise liability claim should be dismissed because it is barred by the relevant statute of limitations.  (Doc. #12, pp. 26-27.)  For the same reasons, defendants argue that the negligent hiring, supervision, and retention claim is also barred.  (Doc. #12, pp. 27-28.)  Under

Florida law, the statute of limitations for negligence claims is four years.  § 95.11(3)(a), Fla. Stat.

A statute of limitations bar is "an affirmative defense, and . . . plaintiff[s] [are] not required to negate an affirmative defense in [their] complaint."  La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004) (citation omitted).  "A dismissal for failure to state a claim on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred."  United States ex rel. Hunt v. Cochise Consultancy, Inc., 887 F.3d 1081, 1085 (11th Cir. 2018) (marks and citation omitted).

Plaintiff alleges that she was trafficked "[f]rom approximately 2013 through February 2016", and on a consistent basis engaged in commercial sex acts at the Gulfcoast Inn Naples "[f]rom approximately 2015 to 2016."  (Doc. #1, ¶ 70.)  Defendants argue that the original complaint was filed on October 30, 2019, in state court, which is more than 4 years later "under the most liberal timeframe."  (Doc. #12, p. 26.)

"Under Florida law, the statute of limitations begins to run when the cause of action accrues."  Carnival Corp. v. Rolls-Royce PLC, 2009 WL 3861482, *5 (S.D. Fla. Nov. 17, 2009) (citing § 95.031, Fla. Stat.).  "A cause of action accrues when the last element constituting the cause of action occurs."  § 95.031(1), Fla. Stat.  "Under the continuing tort doctrine, the cause of

action accrues when the tortious conduct ceases." Effs v. Sony
Pictures Home Entm't, Inc., 197 So. 3d 1243, 1244 (Fla. 3d DCA
2016) (emphasis and citation omitted).  "A continuing tort is
established by continual tortious acts, not by continual harmful
effects from an original, completed act." Id. at 1245 (marks,
emphasis, and citation omitted).

Here, plaintiff alleges she was a repeat victim of sex
trafficking at the Gulfcoast Inn Naples between 2015 and 2016.
The Court finds such allegations sufficient to invoke the
continuing tort doctrine. See Nat'l Sourcing, Inc. v. Bracciale,
2018 WL 6172430, *2 (M.D. Fla. Nov. 26, 2018) (finding allegation
that a defendant's actions "continued to this day" inferred
continuous tortious conduct, thereby making it plausible for the
plaintiffs to assert the continuing tort doctrine as a basis to
toll the statute of limitations).  Accordingly, the Court finds
that plaintiff's premise liability claim did not accrue until
February 2016, and therefore she had until February 2020 to file
a complaint asserting premises liability.

Plaintiff met this deadline by the filing of the first case
on October 30, 2019, in Collier County, Florida, and the filing of
the Amended Complaint on December 31, 2019. S.Y. et al v. Naples
Hotel Co. et al, Case No. 2:20-cv-118.  While the Court determined
severance of the parties was appropriate in the original action,
S.Y., 476 F. Supp. 3d at 1259, and this Complaint was filed in

August 2020, it appears that the December 2019 date is applicable for statute of limitations purposes under the relation-back provisions of Rule 15(c) of the Federal Rules of Civil Procedure.

> Relation back is a legal fiction employed to salvage claims that would otherwise be unjustly barred by a limitations provision. See McCurdy v. United States, 264 U.S. 484, 487, 44 S. Ct. 345, 346, 68 L. Ed. 801 (1924); Moore v. Baker, 989 F.2d 1129, 1131 (11th Cir. 1993). Under Rule 15, a claim in an amended complaint relates back to the filing date of the original complaint if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). When the facts in the original complaint do not put the defendant "on notice that the new claims of negligence might be asserted," but the new claims instead "involve[ ] separate and distinct conduct," such that the plaintiff would have to prove "completely different facts" than required to recover on the claims in the original complaint, the new claims do not relate back. Moore, 989 F.2d at 1132.

Caron v. NCL (Bahamas), Ltd., 910 F.3d 1359, 1368 (11th Cir. 2018). Accordingly, since it is not apparent from the face of the Complaint that the claims are time-barred, dismissal based upon the statute of limitations affirmative defense is not appropriate.

### (b) Failure to State a Claim

Defendants argue the premise liability claim is insufficiently pled because there are no specific instances that would have put defendants on notice of a dangerous condition that they could remedy. (Doc. #12, pp. 30-31.)

"Under Florida law, a business owes invitees a duty to use due care to maintain its premises in a reasonably safe condition.

This includes the duty to protect customers from criminal attacks that are reasonably foreseeable." <u>Banosmoreno v. Walgreen Co.</u>, 299 Fed. App'x 912, 913 (11th Cir. 2008) (citations omitted).

> Foreseeability can be shown by two alternative means. First, a plaintiff may demonstrate that a proprietor knew or should have known of a dangerous condition on his premises that was likely to cause harm to a patron. Second, a plaintiff can show that a proprietor knew or should have known of the dangerous propensities of a particular patron.

<u>Id.</u> (marks, citations, and footnote omitted). Such knowledge must only be pled generally. Fed. R. Civ. P. 9(b). The Complaint contains sufficient allegations that sex trafficking was occurring at the Gulfcoast Inn Naples, and that the defendants knew or should have known of it. (Doc. #1, ¶¶ 90-91.) Accordingly, the Court finds the allegations in the Complaint are sufficient to satisfy the notice pleading requirements.

### (4) Negligent Hiring, Supervision, and Retention

Count Four of the Complaint asserts a claim of negligent hiring, supervision, and retention against each defendant. (Doc. #1, p. 39.) Defendants argue that the claims are improperly lumped together, and that negligent hiring is entirely a separate claim. (Doc. #12, p. 27.) "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of

them is sufficient." Fed. R. Civ. P. 8(d)(2). The Court finds that the claims are properly set forth in a single count.

Defendants further argue that no specific employees are identified that were negligently hired, or that were negligently retained or supervised. (Id., pp. 28-29.) To state a claim for negligent hiring, plaintiff must show that "(1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known." Groover v. Polk Cty. Bd. of Cty. Comm'rs, 460 F. Supp. 3d 1242, 1251 (M.D. Fla. 2020) (quoting Malicki v. Doe, 814 So. 2d 347, 362 (Fla. 2002)). "Different from negligent hiring, 'negligent retention occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment.'" Id. (quoting Degitz v. S. Mgmt. Servs., Inc., 996 F. Supp. 1451, 1461 (M.D. Fla. 1998)). "Florida law also holds employers liable for reasonably foreseeable damages resulting from the negligent training of its employees and agents." Clary v. Armor Corr. Health Servs., Inc., 2014 WL 505126, *4 (M.D. Fla. Feb. 7, 2014)

(citations omitted). (citing Lewis v. City of St. Petersburg, 260 F.3d 1260, 1265 (11th Cir. 2001)). "For an employer to owe a plaintiff a duty, the plaintiff must be in the zone of risk that was reasonably foreseeable to the employer." Id. (citation omitted).

> Accordingly, to state a claim, the plaintiff must allege facts that would establish a nexus between the plaintiff and the tortfeasor's employment from which a legal duty would flow from the defendant-employer to the plaintiff. The plaintiff must then establish that the defendant-employer breached that duty and that the breach caused him damage.

Id. (citations omitted).

The Complaint alleges each defendant was in control of the hiring, instructing, training, supervising, and terminating of the hotel employees, and that each defendant had a duty to make an appropriate investigation of the employees. (Doc. #1, ¶¶ 187-188.)  The Complaint also alleges that the defendants knew or should have known that hotel employees were "allowing criminals to rent rooms for prostitution and drug dealing," "failing to either identify and/or report the human sex trafficking and foreseeable harm" of plaintiff, and "failing to refuse continued lodging services to human sex traffickers." (Id. ¶¶ 184-186.)  The Complaint concludes that defendants were negligent in their hiring, employment, supervision, and termination decisions regarding the employees, and that the sex trafficking of plaintiff was a foreseeable and direct result causing bodily injuries of a

continuing or permanent nature.  (Id. ¶¶ 193-194, 197.)  The Court finds that plaintiff has presented sufficient facts to state plausible claims for negligent hiring, and negligent supervision/retention.

Defendants argue that no specific employee is identified as a negligent hire, and further no specific employee is identified for negligent supervision/retention.  (Doc. #12, pp. 28-29.)  The Court finds that specific employees are not required.  The Complaint alleges "[e]ach and every" defendant "was in control of the hiring" of hotel employees, and responsible for "instructing, training and supervising" yet employees "failed to refuse continued lodging services to human sex traffickers" and "failed to either identify and/or report the human sex trafficking".  (Doc. #1, ¶¶ 185-187.)  The Court is required to accept all factual allegations as true, Erickson, 551 U.S. at 94, and "[i]n adjudicating a motion to dismiss, the district court may not resolve factual disputes."  Page v. Postmaster Gen. & Chief Exec. Officer of U.S. Postal Serv., 493 F. App'x 994, 995 (11th Cir. 2012).  Accordingly, the Court denies the request to dismiss the negligent hiring, supervision, and retention claim.

### (5)  Counts Five and Six

Count Five of the Complaint asserts a claim of negligent rescue against defendants, and Count Six alleges aiding and abetting, harboring, confining, coercion and criminal enterprise.

(Doc. #1, pp. 42, 45.)  Defendants' motion does not address these counts.

**(6)  Anonymity**

Defendants argue that plaintiff is not entitled to proceed anonymously as a matter of right, and that plaintiff must be required to file a formal motion to do so.  (Doc. #12, p. 31.)  On February 24, 2021, plaintiff filed a Motion to Proceed Anonymously and for Entry of a Protective Order (Doc. #39).  Therefore, this issue is moot.

Accordingly, it is hereby

**ORDERED:**

Defendants' Motion to Dismiss (Doc. #12) is **DENIED.**

**DONE and ORDERED** at Fort Myers, Florida, this ___6th___ day of April, 2021.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record